UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAMELA TILLMAN,
               Plaintiff,                          Case Number: 08 C 1641

v.

U.S. ENERGY SAVINGS CORPORATION,
Defendant

**MOTION AND MEMORANDUM IN SUPPORT PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION**

**INTRODUCTION**

This is a consumer class action based on deceptive practices relating to the marketing and sale of U.S. Energy's Fixed Price Program ("FIXED PRICE") to Illinois and Indiana customers. Plaintiff has brought this action for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*. (The "CFA") and the Indiana Deceptive Consumer Sales Act, 24-5-0.5-1 and for unjust enrichment.

Specifically, the FIXED PRICE gas program offered by U.S. Energy claims it protects customers against the fluctuating price of gas for residential users. U.S. Energy is an alternative supplier of gas and is not a regulated utility. That means that it is able to charge a consumer whatever it wishes for the supply of gas. Regulated utilities such as NIPSCO, Peoples Gas and Nicor Gas purchase gas for consumers and pass it through at the price they pay suppliers without markup and only profit from delivery fees.

U.S. Energy falsely, deceptively and knowingly markets and sells U.S. Energy customers its FIXED PRICE program and uniformly states to consumers, in writing, that its FIXED PRICE program has saved consumers over the years substantial sums of money. Consumers' use of gas

is measured in "therms".  U.S. Energy sells gas at a price per therm.  For example, Plaintiff

signed a five year contract with U.S. Energy on August 17, 2007 at a fixed price of $1.14 per

therm (Exhibit A attached) when the utility, *NIPSCO,* was charging her an average of .72 per

therm: a difference of .42 per therm!  (See Exhibit B attached).  Exhibit A followed a solicitation

of Plaintiff by U.S. Energy through Exhibit C, a flyer containing a graph depicting the "stable

rate" straight line of U.S. Energy's gas price as if it were less than the utilities' rate over a period

of time when it is not.  In fact, U.S. Energy's spin of "stable rate" straight line lower cost of gas

is false.  Moreover, U.S. Energy depicts the "stable rate" straight line on its website.  (Exhibit D

attached).  Moreover, U.S. Energy gouges those consumers most vulnerable in the present day

high cost of home heating.

 Defendant's conduct has resulted in several clear patterns. Customers have been slammed

(had their gas bills increased without their knowledge), or told by the sale representative that

he/she was only gathering information, but were not told they were being switched from their

current provider to U.S. Energy.  Customers were told that they would save money by switching

to U.S. Energy only to see their bills increase dramatically.  Customers have been told by U.S.

Energy sales representatives that if they signed up they would not see any upcoming price

increases in their cost of gas, when in fact the utilities' commodity rate at the time of sale has

been significantly below the price offered by U.S. Energy and industry projections were that

prices were not likely to rise anywhere near U.S. Energy's sales price. (Exhibit B to the

Complaint) This information is not really available to customers.  Additionally, U.S. Energy told

customers that if they signed with U.S. Energy their rates would not be increased, when in fact

the *delivery* rate increase recently approved for Peoples Gas is paid by all residential customers,

regardless of their commodity supplier. Customers were told by U.S. Energy representatives that they represented Peoples Gas or Nicor Gas when in fact they did not. Customers were told by U.S. Energy representatives that they were sent out by the Illinois Commerce Commission when in fact they were not. Customers were told U.S. Energy was part of a government program to protect people from rising gas prices. Customers were told they were signing a petition to lower heating bills. Customers were not told that U.S. Energy contracts were for five years and that to terminate the contract before the end date, the customer would have to pay a sizable termination fee ranging from several hundred dollars to several thousand dollars.

### 1.     There is adequate numerosity to certify this class

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Questions concerning "numerosity" for purposes of maintaining a class action depend on the particular facts of each case. Generally, if a proposed class has more than forty people, then numerosity is satisfied. *See Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (holding that where class numbers at least forty, joinder is generally considered impracticable); *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (finding forty class members sufficient to certify class); *Cypress v. Newport News General & Nonsectarian Hospital Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (holding that eighteen class members is sufficient for certification purposes). This Court "previously has rejected the notion that the size of the plaintiff's class, alone, is sufficient to bar certification" in (b)(3) class actions. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 979 (7th Cir. 1977) (citing *Appleton Electric Co. v. Advance United Expressways*, 494 F.2d 126, 135 n. 14 (7th Cir. 1974)).

3

It is not necessary that the precise number of class members be known. "The plaintiffs are not required to specify the exact number of class members so long as a good faith estimate is provided." *McKenzie v. City of Chicago*, 175 F.R.D. 280, 285 (N.D. Ill. 1997) (citing *Long v. Thornton Township High School Dist. 205*, 82 F.R.D. 186, 189 (N.D. Ill. 1979)). In the absence of any arbitrary rule, the court has the ability to make common sense assumptions to find support for numerosity. *Patrykus v. Gomilla,* 121 F.R.D. 357, 360 (N.D. Ill. 1988). "[T]he court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since discovery is not essential in most cases in order to reach a class determination... Where the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable." 2 *Newberg on Class Actions* §7.22.A (3d ed. 1992).

Applying these standards to the present case, it is reasonable for the court to infer that the numerosity requirement is satisfied. On its Internet Website, U.S. Energy claims it supports gas to almost 1,000,000 Americans. The proposed class is composed of Indiana and Illinois purchasers of Defendant's FIXED RATE program. Although the exact numbers will be determined from a review of U.S. Energy's records during discovery, at this point, the purported class is believed to be so numerous that joinder is impracticable as U.S. Energy's almost 1,000,000 Americans use its program.

### 2. There is adequate commonality to certify this class.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.

1992)(citing *Franklin v. City of Chicago*, 102 F.R.D. 944, 949-50 (N.D. Ill. 1984)). "A certifiable class claim must arise out of the same legal or remedial theory." *Patterson v. General Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980). Where a question of law involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984); *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D. Ill. 1988). Not all factual or legal questions raised in the litigation need be common, however, so long as at least one issue is common to all class members. *Spencer v. Central States Pension Fund,* 778 F. Supp. 985, 989 n.2 (N.D. Ill. 1991). *See also Alliance to End Repression*, 565 F.2d at 979 (finding that so long as the common issue of law or fact is alleged, it is irrelevant to class certification if a variety of activities are complained of or violations alleged).

In the present case, Plaintiff has appropriately identified a common question of law based on a standardized course of conduct of Defendant that is common to the entire class. Specifically, Plaintiff has challenged U.S. Energy's systematic conduct of stating that its FIXED PRICE program, if purchased, results in lower gas costs to consumers. Plaintiff's claim challenges a practice by Defendant which is an alleged violation of the law because purchasing the FIXED PRICE program does *not* result in lower gas costs to consumers. An action that challenges the legality of a standardized business practice which violates the law and that is applied to an entire group of customers is well-suited for class certification. *See Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161 (7th Cir. 1974) (considering propriety of disclosure documents under Truth in Lending Act); *Heastie v. Community Bank of Greater Peoria*, 125

F.R.D. 669 (N.D. Ill. 1989) (reviewing execution of home improvement financing documents in

sequence that evaded consumers' rescission rights); *Haroco v. American Nat'l Bank & Trust Co.*,

121 F.R.D. 664, 669 (N.D. Ill. 1988) (involving improper computation of interest).

The commonality criterion is normally satisfied when there is an essential common

factual link between all class members and the defendant for which the law provides a remedy.

*Halverson v. Convenient Food Mart, Inc.*, 69 F.R.D. 331, (N.D. Ill. 1974).  Factual variations

among the class grievances does not defeat a class action.  *Patterson v. General Motors Corp.*,

631 F.2d at 481.  Class certification has been upheld by this court although class members have

"suffered" to different extremes.  For example, in *Rosario*, this court found the commonality

requirement to be satisfied because all students had been effected by a poor educational program.

963 F.2d at 1017.  This was the determination despite the fact that some students under the

program had successfully passed the state licensing exam.  *Id.* at 1018.  This can be compared to

the case at hand.  In the instant action, Plaintiff can demonstrate that the common questions of

law and fact raised in her Complaint are consistent with that of the class.  Plaintiff has

challenged a corporate practice of portraying lower gas costs in violation of the law.  All

proposed class members have been subject to this practice.

### 3. There is adequate typicality to certify this class.

The Seventh Circuit established in *Rosario v. Livaditis* that "[t]he question of typicality

in Rule 23(a)(3) is closely related to the ... question of commonality."  963 F.2d at 1018.  A

"plaintiff's claim is typical if it arises from the same event or practice or course of conduct that

gives rise to claims of other class members and his or her claims are based on the same legal

theory."  *De La Fuente v. Stokey-Van Camp, Inc.*, 713 F.3d 225, 232 (7th Cir. 1983).  In order to

determine if typicality is met, it is necessary to compare the claims of the representative with the claims of the class. *Patterson*, 631 F.2d at 481.

In the instant case, typicality is inherent in the class definition. In her Complaint, Plaintiff has alleged that Defendant consistently acted to improperly portray the purchase of the FIXED RATE program as one which will result in the lower cost of gas. Plaintiff was a victim of this scheme, as was all other purported class members. Although the claim of each class member may involve a different amount of damages, their claims all arise from the same course of conduct by Defendants. Thus, Rule 23(a)(3)'s typicality requirement has been met.

### 4. Plaintiff is an adequate class representative.

Finally, Rule 23(a)(4) also requires that the named Plaintiff provide fair and adequate protection of the interests of the class. Fed. R. Civ. P. 23(a)(4). In determining whether Plaintiff provides fair and adequate protection of the class members' interests, the court need only consider whether her attorneys are qualified, experienced, and generally able to conduct the proposed litigation, and whether Plaintiff has interests antagonistic to those of the class. *Rosario v. Livaditis*, 963 F.2d at 1018. *See also Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986)(en banc) (holding that the 7th Circuit considers adequacy of representation to be comprised of two parts: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest" of the class members).

In the present case, Plaintiff will fairly and adequately protect the interests of the class. She has retained counsel experienced in handling class actions and complex civil actions involving unlawful business practices. Plaintiff's counsel are able and accomplished, and have

and will serve as competent, thorough and rigorous advocates for the interests of the class.
Plaintiff's counsel are fully capable of conducting the proposed litigation of this case. They have
been and are presently involved in complex state and federal court litigation as well as class
action litigation.

Plaintiff's interests are also coincident, rather than antagonistic, with the general interests
of the class. The case at hand is a prime example of a situation in which Plaintiff can adequately
and fairly represent the class because Plaintiff's grievances are not personalized. Plaintiff is
challenging a consistent course of illegal conduct on the part of Defendant. Although the
amount of damages suffered by individual class members may differ, the harm suffered by
Pamela is the same as the harm suffered by all members of the class, and those harms have arisen
from a common course of conduct by Defendant. Given the commonality between the claims of
Pamela and the class members, there is no potential for conflicting interests in this action.

Even in a case where the representative's claims are not exactly the same as other class
members, a court will not disqualify the representative. *Secretary of Labor v. Fitzsimmons*, 805
F.2d at 697. The only requirement placed on the representative is that he or she does not seek
relief "antagonistic to the interests of other potential class members. *Id.* Given the identity of
claims between Plaintiff and the class members, there is no potential for conflicting interests in
this action. Accordingly, there is no antagonism between the interests of Plaintiff and those of
the class.

**B.    THE PRESENT ACTION IS MAINTAINABLE AS A CLASS ACTION
BECAUSE IT IS SUPERIOR TO OTHER AVAILABLE METHODS FOR
THE FAIR AND EFFICIENT ADJUDICATION OF THE
CONTROVERSY.**

In addition to satisfying the prerequisites of Rule 23(a), the court must find that, "the

questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Factors that are pertinent to the predominance and superiority criteria are: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; © the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." *Id.*

When deciding whether a class action is superior to other available methods to adjudicate a controversy, the court may consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, (7th Cir. 1974). The presence of as little as one common issue of law or fact that predominates over individual issues is sufficient for class certification. *Arenson v. Whitehall Convalescent and Nursing Home, Inc.,* 164 F.R.D. 659, 663 (N.D. Ill. 1996). In the present action, predominance is satisfied because there is no better method available for the adjudication of the claims that might be brought by each individual class member than a class action. In the instant action, Plaintiff can demonstrate that the common questions of law and fact raised in her Complaint predominate over any questions that may affect only individual class members. First, the interest of members of the class in individually controlling the prosecution or defense of separate actions is virtually nonexistent because the individual damages are small, in comparison to the litigation costs

necessary to prosecute the claim to its conclusion.

Second, the present action is precisely the sort of case contemplated by Rule 23(b)(3); a situation in which a defendant unlawfully victimizes a large number of unsuspecting consumers, resulting in millions of dollars in unlawful profits but insufficient damage to any one person to warrant an individual action. *See Amchem*, 117 S.Ct. at 2245 (citing Adv. Comm. Notes, 28 U.S.C. App., p. 698, to describe the extent of a proper class certification). One of the primary functions of the class suit is to provide a device for vindicating claims, which, taken individually, are too small to justify legal action but which are of significant size if taken as a group. *See Id.* at 2246 (citing Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv. L. Rev. 356, 375-400 (1967)). *See also Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights").

The difficulties likely to be encountered in the management of a class action in the present case are minimal. Notification and distribution of benefits to class members will not be difficult because Defendant presumably maintains accurate records identifying gas purchasers who have made coverage claims and whose claims have been improperly classified. The management of this action is likely to present fewer difficulties than many other types of cases that are routinely certified, such as those for securities fraud. The special efficacy of the consumer class action has been noted by the Northern District of Illinois and is applicable to this case:

> A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of

small and medium sized claimants may be involved.  In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .

*In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted).

The District Court for the Eastern District of Pennsylvania noted that:

Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action . . . The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.

*Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628-29 (E.D. Pa. 1994).

## II. CONCLUSION

Plaintiff has demonstrated that each of the prerequisites for class certification set forth in

Rule 23(a) are satisfied and that the requirements of Rule 23(b)(3) have been met.  The nature of

the present case makes it more suitable for class treatment than many other actions that are

commonly certified as class actions.  Accordingly, the Court should enter an order allowing the

action to proceed as a class action and certifying the proposed class which is:

"All consumers in Indiana and Illinois who paid for the U.S. Energy FIXED PRICE program who were billed for gas after January 1, 2007 resulting in a cost in excess of the utility price they would have paid for gas had they remained with the utility rather than contract with U.S. Energy."

Respectfully submitted,

_____s/Arthur S. Gold_____

Gold & Coulson
A Partnership of Professional
and Limited Liability Corporations
11 S. LaSalle St., Suite 2404
Chicago, IL 60603
(312) 372-0777  (312) 372-0778 Facsimile
:\wp51asg\Classaction\CUB\Tillman\Class Cert Memo Motion.wpd

**STATE OF ILLINOIS**    )
                      )    **SS:**                                  **#5231**
**COUNTY OF COOK**    )

## VERIFICATION

        Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure of the State of Illinois, the undersigned certifies that the Motion and Memorandum in Support of Plaintiff's Motion for Class Certification was served on March 24, 2008 to the District Court.

                                         s/Arthur S. Gold