UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAMELA TILLMAN,
   Plaintiff,

v.

U.S. ENERGY SAVINGS CORPORATION,
Defendant

Case Number 08 C 1641
**Plaintiff demands trial by jury.**

## PLAINTIFF PAMELA TILLMAN'S RESPONSE TO DEFENDANT'S 12(b)(6) MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

NOW COMES PAMELA TILLMAN ("TILLMAN") by and through her attorneys, Gold & Coulson, a partnership of professional and limited liability corporations, and Robert Kelter, and in response to Defendant's Motion to dismiss the Amended Class Action Complaint ("AC") states as follows:

### BACKGROUND

Defendant U.S. Energy Savings Corporation ("U.S. Energy") began supplying natural gas to TILLMAN's home as part of its "Fixed Price" program on or about August 17, 2007 (AC Ex. A). TILLMAN has alleged that U.S. Energy engaged in fraudulent and deceptive business practices which resulted in her purchase of its natural gas (AC ¶ 16). As a result of U.S. Energy's conduct, TILLMAN has been billed and has paid exorbitant gas price rates. U.S. Energy's deceptive conduct led TILLMAN to switch from NIPSCO, a regulated utility. The cost of the switch to TILLMAN was several hundred dollars per month more than what she would have paid had she remained with NIPSCO (AC ¶ 16 and Exs. E, F). U.S. Energy's misrepresentation is universal, identical, consistent and to all unknowing victims such as

1

TILLMAN and other customers: that they would save money by switching to the Fixed Price program (AC Exs. C, D).

## STANDARD

When ruling on a motion to dismiss under Rule 12(b)(6), a court must take as true all of Plaintiff's factual allegations and construe them in plaintiff's favor. *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006). A complaint should only be dismissed "if there is no set of facts, even hypothesized, that could entitle a plaintiff to relief." *Id.*

## SUMMARY OF ARGUMENT AS TO WHY U.S. ENERGY'S MOTION SHOULD BE DENIED.

A.   Plaintiff has sufficiently pled allegations required by Rules 9(b) and 12(b)(6) to support claims for consumer fraud and unjust enrichment in the face of Defendant's conduct. Rule 9(b) applies to "all averments of fraud or mistake"; it requires that "the circumstances constituting fraud ... be stated with particularity" but provides that "[m]alice, intent, knowledge, and other condition of mind of a person, may be averred generally." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2508 (2007). "[F]aced with a Rule 12(b)(6) motion to dismiss ... courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true." *Id.* at 2509.

B.   U.S. Energy's arguments as to TILLMAN's qualifications to be class representative are premature at the 12(b)(6) stage of litigation.

C.   This court need not dismiss or stay Plaintiff's action based on the presence of a similar claim being prosecuted in Illinois state court.

## A. THE SUFFICIENT ALLEGATIONS

A. **Tillman's consumer fraud claim is based upon the same consistent universal conduct of U.S. Energy: the graph appearing on its website *prior to the filing of this lawsuit* and in its brochures, and the scripts which it utilizes in soliciting potential customers**

U.S. Energy's identical, consistent and universal fraudulent and deceptive practices are first demonstrated by its utilization of a script to deceive potential customers like TILLMAN and the class members as set forth in the AC ¶¶ 14, 25 as follows:

> "14. On information and belief, USESC includes in its training for salespersons deceptive business practices, including a training script that states "your home will **NOT** be subject to **ANY** of the upcoming price increase.
>
> 25. U.S. Energy provides its customer service representatives with prepared scripts and other written materials aimed at promoting its FIXED PRICE program as costing less for gas."

Scripts used by corporations to deceive consumers trump a requirement of individual reliance. For example, in *Barkman v. Wabash, Inc.*, 674 F. Supp. 623, 635 (N.D. Ill. 1987), Judge Kocoras ruled that individual issues of reliance do not thwart class actions. All the plaintiffs in *Barkman* were "faced with the same allegedly fraudulent statements." *Id.* The fraud alleged was "based on conduct of defendants which was uniform as to all class members." *Id.* Similarly, the court *In re Prudential Ins. Co. of America Sales Practices Litigation*, 962 F.Supp. 450, 515 (D.N.J. 1997) rejected the argument that individual issues of reliance thwart class actions. In that case, Prudential used deceptive sales and marketing materials and scripts to make uniform misrepresentations to potential clients as part of a common course of conduct. *Id.* at 515. The Third Circuit approved class certification. *See In re Prudential Insurance Co. of America Sale Practices Litigation.* 148 F.3d 283, 290 (3d Cir. 1998).

In addition to its script utilization, U.S. Energy publishes in its brochure and did on its website *until the filing* of this lawsuit the following graph:



The graph misrepresents to all potential class members that during the years 2000-2005, consumers saved money by changing to U.S. Energy. The fact that U.S. Energy removed the graph from its website *after* this lawsuit was filed speaks volumes as to its admission of wrongful conduct. The AC alleges in paragraphs 24, 34, and 38 that U.S. Energy knew this representation to be untrue as follows:

> "24. All U.S. Energy materials state that the FIXED PRICE program has saved customers the cost of gas for years (see graphs in attached Exhibits B and C). U.S. Energy's customer service representatives that sell the program tell consumers the FIXED PRICE program will lower their cost of gas, whereas U.S. Energy knows that this is not true based upon prior cost differentials between U.S. Energy and the regulated utilities. Just as in the case of Pamela, Defendant's consumers pay more for the cost of gas.
>
> 34. U.S. Energy violated both Acts by:
>   A. making written misrepresentations and/or oral misrepresentations that induced U.S. Energy customers to contract for U.S. Energy's FIXED PRICE program;
>   B. concealing or failing to disclose material facts that would have caused U.S. Energy customers covered by

> the FIXED PRICE program to understand that U.S. Energy provides no benefits to them.
>
> 38. U.S. Energy has charged and received (and continues to charge and receive) from U.S. Energy customers a monthly fee for its FIXED PRICE program based upon a false misrepresentation that U.S. Energy customers would be provided a benefit."

*See Heastie v. Community Bank of Greater Peoria*, 690 F.Supp. 716, 722 (N.D. Ill. 1988) (holding that "knowingly accepting the benefits of conduct which has fraudulently misled another into making a transaction is an impermissible enrichment, contrary to public policy"); *See also Captain & Co., Inc. v. Stenberg*, 505 N.E.2d 88, 96 Ind. Ct. App. 1987 ("In Indiana, fraud is defined as "a material misrepresentation of past or existing fact, which representation is false, and made with knowledge or reckless ignorance of the falsity, and which causes reliance upon such representations to the detriment of the person so relying.") (citing *Tutwiler v. Snodgrass*, 428 N.E.2d 1291, 1295 (Ind. Ct. App. 1981)).

Saliently, under the Illinois Consumer Fraud and Deceptive Business Practice Act, 815 ILCS 505/1 et. seq. ("CFA"), it is unnecessary for a Plaintiff to prove actual reliance. As the 7th Circuit stated in *Ryan v. Wersi Elec. GmbH & Co.*, 59 F.3d 52, 53 (7th Cir. 1995): "Illinois law does not require a plaintiff to prove actual reliance in order to establish a claim under the Consumer Fraud Act." A plaintiff simply has to show that the alleged misrepresentations were material, and that they proximately resulted in damages. *Id.* TILLMAN's AC ¶ 3, AC ¶ 16 referencing Exs. E, F fall well within the ruling of *Ryan* as follows:

> "3. U.S. Energy falsely, deceptively and knowingly markets and sells U.S. Energy customers its FIXED PRICE program and uniformly states to consumers, in writing, that its FIXED PRICE program has saved consumers over the years substantial sums of money. Consumers' use of gas is measured in "therms". U.S. Energy sells gas at a price per

therm. For example, Pamela signed a five year contract with U.S. Energy on August 17, 2007 at a fixed price of $1.14 per therm (Exhibit A attached) when the utility, *NIPSCO*, was charging her an average of .72 per therm: a difference of .42 per therm! (See Exhibit B attached). Exhibit A followed a solicitation of Pamela by U.S. Energy through Exhibit C, a flyer containing a graph depicting the "stable rate" straight line of U.S. Energy's gas price as if it were less than the utilities' rate over a period of time when it is not. U.S. Energy also depicts the "stable rate" straight line on its website. (Exhibit D attached). The fact: U.S. Energy gouges those consumers most vulnerable in the present day high cost of home heating.

16. As to Pamela, after signing Exhibit A, she was supplied gas in her home from U.S. Energy only to discover that her heating bills were now 62% higher in the months of January and February 2008, alone, in terms of the gas supply. As a result of her switch from NIPSCO after being fooled by U.S. Energy, the cost of gas supply in therms is easily demonstrated by Exhibits E and F attached. Exhibits E and F are heating bills from NIPSCO, however, the gas supply described on those bills is U.S. Energy's supply in therms. The following is a summary:

U.S. Energy - December 2007 = 467.80 therms @ $1.14/therm:     $533.29

Had Plaintiff remained with NIPSCO
        December 2007 = 467.80 therms @ .72/therm:     -$336.81
                                       Extra cost to Plaintiff:     $196.47

U.S. Energy - January 2008 = 439.40 therms @ $1.14/therm:     $500.91

Had Plaintiff remained with NIPSCO
        January 2008 = 439.40 therms @ .70/therm:     -$307.58
                                       Extra cost to Plaintiff:     $193.33"

Dividing what would have been the total NIPSCO charge of $644.39 for these two months by the total U.S. Energy charges of $1,034.20, the increase is 62%. The actual out-of-pocket dollars paid by Plaintiff were $389.80 for only two months!"


With respect to Fed R. Civ. P. 9(b)'s requirements that all fraud claims be pled with specificity, the 7th Circuit has defined this to mean the "who, what, when, where, and how" in

6

order to comply with notice pleading requirements concerning fraud. *Siegal v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1039 (N.D. Ill. 2007) (*quoting DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). Plaintiff's AC has alleged: the "who": U.S. Energy (AC ¶¶ 3-14; AC Exs. A-D); the "what": false and deceptive marketing in the form of universal practices by use of scripts and false charts, as set forth in AC ¶¶ 3, 14; AC Exs. C, D; the "when": January 1, 2007 – present AC ¶ 27; "where" and the "how": U.S. Energy's website and flyers, the AC ¶¶ 3-14; Exs. C, D all as follows:

> "4. U.S. Energy customers have been slammed (unknowingly having their gas bills increased), or not told they were being switched from their current provider to U.S. Energy by U.S. Energy sales representatives.
>
> 5. Customers have been told that they would save money by switching to U.S. Energy only to see their bills increase dramatically.
>
> 6. Customers have been told by U.S. Energy sales representatives that if they signed up they would not see any upcoming price increases in their cost of gas, when in fact the utilities' commodity rate cannot be predicted and the regulated utility price at the time of sale has been significantly below the price offered by U.S. Energy. (Exhibit B attached) Additionally, U.S. Energy told customers that if they signed with U.S. Energy their rates would not be increased, when in fact the *delivery rate* increase recently approved for Peoples Gas is paid by *all* residential customers, regardless of their commodity supplier.
>
> 7. Customers have been told by U.S. Energy representatives that they represented Peoples Gas or Nicor Gas when in fact they did not.
>
> 8. Customers have been told by U.S. Energy representatives that they were sent out by the Illinois Commerce Commission when in fact they were not.
>
> 9. Customers have been told U.S. Energy was part of a government program to protect people from rising gas prices when in fact it is not.
>
> 10. Customers have been told they were signing a petition to lower heating bills, when in fact they were not.

11. Customers were not told that U.S. Energy contracts were for five years and that to terminate the contract before the end date, the customer would have to pay a sizable termination fee ranging from several hundred dollars to several thousand dollars.

12. On information and belief, U.S. Energy targets its door-to-door marketing efforts to non-English speakers and senior citizens.

13. On information and belief, U.S. Energy representatives also misleadingly have compared the cost of natural gas to gasoline to have customers agree to switch. See attached Exhibit D, a transcript of the February 7, 2008 CBS2 undercover story regarding USESC.

14. On information and belief, USESC includes in its training for salespersons deceptive business practices, including a training script that states "your home will **NOT** be subject to **ANY** of the upcoming price increase."

U.S. Energy is "*not left guessing* as to the outlines of the fraud, its purposes, or the critical facts which are purportedly misrepresentations." (emphasis added) *Gros v. Midland Credit Mgmt.*, 525 F. Supp. 2d 1019, 1029 (N.D. Ill. 2007) (*quoting Barr v. Safeco Ins. Co. of Am.*, 583 F. Supp. 248, 259 (N.D. Ill. 1984)).

In *Gros*, the plaintiff sufficiently pleaded allegations of fraud related to the purchase of debt by alleging the who, what, when, where and how of the alleged fraud, on facts similar to the ones here (for example, "agents and employees" was sufficiently detailed to allege the "who" of the alleged fraud). In *Barr*, the plaintiff sufficiently pled allegations of a fraud claim by showing, "in broad strokes, the nature and essential factual elements of the alleged fraud." *Barr*, 583 F. Supp. at 258. The defendant in *Barr* was not left guessing as to the subject-matter of the fraud; the court noted that further details of the fraud could wait until discovery. U.S. Energy is well aware of Plaintiff's allegations and upon what they are based on. The engineering and marketing geniuses at U.S. Energy will have no problem.

## 2. Plaintiff's unjust enrichment count is based upon U.S. Energy's fraudulent conduct: not any contract.

TILLMAN pleads no counts or allegations claiming U.S. Energy breached a contract. Alternative theories may appear in a complaint. Fed. R. Civ. P. 8(d)(2). For example in *Peddinghaus v. Peddinghaus*, 692 N.E.2d 1221, 1225 (Ill. App. Ct. 1998), a case involving an unjust enrichment claim based on fraud, the court held that because the unjust enrichment claim was based in tort, the presence of a written agreement between the parties did not defeat the claim. Also see *Liberty Mut. Ins. Co. v. Decking and Steel, Inc.*, 301 F.Supp.2d 830, 835 (N.D. Ill. 2004) ("unjust enrichment, may be pursued in the presence of a written contract between the parties only if it sounds in tort, rather than in quasi-contract); and *ShopLocal LLC v. Cairo, Inc.*, 2006 WL 495942 at *2 (N.D. Ill. Feb. 27, 2006) ("Under Illinois law, an unjust enrichment claim may be predicated on either contract or tort").

U.S. Energy's reliance on *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165 (Ill. 1992) is misplaced. In *Hartigan*, the plaintiff's claim was not one outside the contract term. It explicitly mentioned the existence of a contract between the parties in reference to its unjust enrichment claim. *Id.* at 177. Here, Plaintiff's claim is one of fraud; *outside the contract*. Where Plaintiff's unjust enrichment claim is outside the contract between the parties, *Circuit Utility Audit Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688-89 (7th Cir. 2004) clearly allows a claim of unjust enrichment despite the existence of a contract.

The same is true in Indiana. *Blue Frog Mobile NV Inc. v. Navicomm LLC*, 2007 WL 3334793 at *3 (S.D. Ind. Nov. 8, 2007) demonstrates that a Plaintiff must only show "a measurable benefit has been conferred on the defendant under such circumstances that the

defendant's retention of the benefit without payment would be unjust." *Id.* In *Blue Frog*, the Plaintiff sought recovery for benefits conferred (misappropriation of funds owed to plaintiff) upon one of the defendants. The court ruled plaintiff had conferred a benefit upon defendant, the retention of which would have been unjust under the circumstances; thus plaintiff had stated a valid unjust enrichment claim despite the presence of a written agreement. *Id.* at *3-4.

**B.    Tillman's standing to be a class representative argued by U.S Energy is premature.**

*Payton v. County of Kane,* 308 F.3d 673, 680 (7th Cir. 2002), demonstrates that the 7th Circuit has refused to address standing issues before class certification issues, noting: "standing requirements must be assessed with reference to the class as a whole, not simply with reference to the individual named plaintiffs." The *Payton* court also noted the importance of observing the Supreme Court's directive "to consider issues of class certification prior to issues of standing." *See Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 831 (1999).

Moreover, U.S. Energy has conceded Plaintiff's standing to bring a lawsuit on behalf of Indiana consumers. Just like the plaintiff in *Kuhl v. Guitar Ctr. Stores, Inc.,* 2008 WL 656049 (N.D. Ill. March 5, 2008) who raised out of state claims, so here has TILLMAN. In considering a Rule 12(b)(6) motion, Judge Gottschall noted that the issue of standing is more appropriately addressed at class certification. No class had yet been certified (including potential plaintiffs residing in different states from the lead plaintiff) at the time of the 12(b)(6) motion, so Judge Gottschall refused to dismiss plaintiff's claims for lack of standing. *Kuhl* followed the reasoning *In re Grand Theft Auto Video Game Consumer Litig.,* 2006 WL 3039993 (S.D.N.Y. Oct. 25, 2006), a case (with similar facts) where the defendants conceded that the named plaintiffs had standing to bring claims under the consumer protection laws in which they lived, but challenged

the named plaintiffs' standing to pursue claims on behalf of an as-yet uncertified class. The *Grand Theft Auto* court reasoned that the issue of class certification was "logically antecedent" to the issue of standing, because alleged standing problems dealt with conjectural claims of an as-yet uncertified class.

*See also In Re Hypodermic Products Antitrust Litigation*, Slip Op., 2007 WL 1959224 (D.N.J. 2007) (refusing to consider "premature" standing arguments at Rule 12(b)(6) stage); *Strzakowlski v. Gen. Motors Corp.*, 2005 WL 2001912 at *26 (D.N.J. Aug.16, 2005) (denying motion to dismiss class allegations, and noting that "courts permit class action allegations to be stricken prior to discovery, such as on a Rule 12(b)(6) motion ... only 'in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met.' "); *Borough of Morrisville v. Delaware River Basin Comm'n*; 382 F.Supp. 543, 547 (E.D. Pa. 1974) ("The motion under Rule 12(b) to dismiss the complaint is not the proper vehicle for attacking the validity of plaintiffs' class action allegation. Such a challenge can properly be made when plaintiff moves for determination of class").

### C. *Colorado river*s is inapplicable.

Federal courts have a "virtually unflagging obligation" to exercise jurisdiction conferred on them by Congress. *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976). Abstention is warranted only by the "clearest of justifications." *Id.* at 819. Abstention is an "*extraordinary*" and "*narrow*" exception, not the rule (emphasis added). *Id.* at 813 (citing *County of Alleghany v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959)).

In order for a federal court to take the extreme *Colorado River* step, the state and federal suits involved must be identical. Suits are identical or parallel if "substantially the same parties

are litigating substantially the same issues simultaneously in two fora." *AAR Int'l, Inc. v. Nimelias Enter. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) (quoting *Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir. 1990)). The issue is whether there is a substantial likelihood that the state case will dispose of all claims that are presented in the federal case. *AAR Int'l*, 250 F.3d at 518 (quoting *Day v. Union Mines, Inc.*, 862 F.2d 652, 656 (7th Cir. 1988)). TILLMAN is an Indiana citizen. No claims of Indiana citizens will be decided by the Illinois State Court. No claims of Illinois citizens have been decided yet by the Illinois Court. The parties are not "substantially similar" in the state and federal suits. Serious questions exist as to whether the state case will ever dispose of all claims presented in the federal case, such as whether the potential plaintiffs will be justly reimbursed for the money they lost or whether their contracts will be rescinded without penalty.

The Indiana Attorney General is not pursuing a similar action against Defendant. Any "substantial doubt" that the parallel litigation will fail to resolve all issues between the parties would result in a "serious abuse of discretion" if a district court were to dismiss or stay the federal case in deference to a state suit. *AAR Int'l*, 250 F.3d at 518.

Even assuming, *arguendo*, that the Illinois state case and the federal case are parallel (which they are not), a Defendant has a ten-factor balancing test to establish exceptional circumstances which would justify abstention. The steps are: (1) whether the state has assumed jurisdiction over the property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law; (6) the adequacy of state-court action to protect federal plaintiffs' rights; (7) the relative progress of state and federal proceedings; (8) the presence or

absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 694 (7th Cir. 1985). A decision regarding abstention is based on assessing the totality of all factors; the weight of the factors varies from case to case. *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.* 180 F.3d 896, 898 (7th Cir. 1999); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). The balance is *"heavily weighted"* in favor of the exercise of jurisdiction (emphasis added). *Id.*

Here, as stated, Illinois has assumed no jurisdiction over Indiana citizens or property. U.S. Energy's corporate office is in Chicago and Plaintiffs in Illinois and Indiana enter into contracts which feature U.S. Energy's Chicago address (AC Ex. A); the federal forum is convenient. A federal class action claim would avoid piecemeal litigation by grouping similarly situated plaintiffs together. The state suit came first but has not progressed to a point where the federal litigation would be duplicating what has been litigated in the state suit. The federal suit is based on Indiana law, as well as Illinois law; an Illinois state court would be less-equipped to hear intertwined issues related to Indiana law. As discussed above, there are questions about whether the Illinois state court can adequately protect all plaintiffs' rights, not to mention the fact that Indiana plaintiffs, like TILLMAN, would be left un-protected. There is concurrent jurisdiction on the Illinois claims, but not the Indiana claims. TILLMAN's claim is far from vexatious or contrived.

## CONCLUSION

For all the above reasons, Plaintiff asks this Court to deny Defendant's Rule 12(b)(6) motion to dismiss the AC.

> Respectfully submitted,
>
> By:   <u>s/Arthur Gold</u>
>        One of their counsel

GOLD & COULSON
A Partnership of Professional
and Limited Liability Corporations
11 S. LaSalle Street
Suite 2402
Chicago, Illinois 60603
(312) 372-0777
(312) 372-0778 (Facsimile)

| | | |
|---|---|---|
| **STATE OF ILLINOIS** | ) | |
| | ) SS: | **#5231** |
| **COUNTY OF COOK** | ) | |

# CERTIFICATION

     Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure of the State of Illinois, the undersigned certifies that the Response to Defendant's 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint was served on June 10, 2008 to the District Court and e-mail notification by the District Court.


                                                                                              s/Arthur S. Gold